JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Save Strawberry Canyon

## DEFENDANTS

Lawrence Berkeley National Laboratory; Steven Chu, LBNL, Director, U.S. Dept. of Energy; Samual W. Bodman, DOE, Secretary, [see attached]

**(b)** County of Residence of First Listed Plaintiff Alameda County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Michael R. Lozeau (Cal. Bar No. 142893); (510) 749-9102
Lozeau Drury LLP
1516 Oak Street, Suite 216
Alameda, CA 94501

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | **PERSONAL INJURY** | **PERSONAL INJURY** | | | |
| [ ] 110 Insurance | | | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | [ ] 892 Economic Stabilization Act |
| | | | [ ] 740 Railway Labor Act | | [X] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 791 Empl. Ret. Inc. | | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | Security Act | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | or Defendant) | [ ] 900 Appeal of Fee |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party | Determination |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | **IMMIGRATION** | 26 USC 7609 | Under Equal Access |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | to Justice |
| | [ ] 446 Amer. w/Disabilities - | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – | | [ ] 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | [ ] 440 Other Civil Rights | | [ ] 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
National Environmental Policy Act, 42 U.S.C. § 4321 et seq.

Brief description of cause:
approval of project at national laboratory without complying with NEPA's environmental review requirements

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [X] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE
July 21, 2008

SIGNATURE OF ATTORNEY OF RECORD

Civil Cover Sheet – Attachment A

DEFENDANTS (cont'd)

BENJAMIN ALLEN, in his official capacity as a Regent of the Regents of the University of California; RICHARD C. BLUM, in his official capacity as a Regent of the Regents of the University of California; WILLIAM DE LA PEÑA, in his official capacity as a Regent of the Regents of the University of California; RUSSELL S. GOULD, in his official capacity as a Regent of the Regents of the University of California; JUDITH L. HOPKINSON, in her official capacity as a Regent of the Regents of the University of California; JOHN HOTCHKIS, in his official capacity as a Regent of the Regents of the University of California; EDDIE ISLAND, in his official capacity as a Regent of the Regents of the University of California; ODESSA P. JOHNSON, in her official capacity as a Regent of the Regents of the University of California; JOANNE CORDAY KOZBERG, in her official capacity as a Regent of the Regents of the University of California; SHERRY L. LANSING, in her official capacity as a Regent of the Regents of the University of California; MONICA C. LOZANO, in her official capacity as a Regent of the Regents of the University of California; GEORGE M. MARCUS, in his official capacity as a Regent of the Regents of the University of California; NORMAN J. PATTIZ, in his official capacity as a Regent of the Regents of the University of California; BONNIE RIESS, in her official capacity as a Regent of the Regents of the University of California; FREDERICK RUIZ, in his official capacity as a Regent of the Regents of the University of California; LESLIE TANG SCHILLING, in her official capacity as a Regent of the Regents of the University of California; BRUCE D. VARNER, in his official capacity as a Regent of the Regents of the University of California; PAUL D. WACHTER, in his official capacity as a Regent of the Regents of the University of California; ARNOLD SCHWARZENEGGER, in his official capacity as a Regent of the Regents of the University of California; MARK G. YUDOF, in his official capacity as a Regent of the Regents of the University of California; JOHN GARAMENDI, in his official capacity as a Regent of the Regents of the University of California; FABIAN NUÑEZ, in his official capacity as a Regent of the Regents of the University of California; JACK O'CONNELL, in his official capacity as a Regent of the Regents of the University of California; ELEANOR V. BREWER, in her official capacity as a Regent of the Regents of the University of California; and PHILIP J. BUGAY, in his official capacity as a Regent of the Regents of the University of California



1    Michael R. Lozeau (CA Bar No. 142893)
     e-mail: michael@lozeaudrury.com
2    Richard T. Drury (CA Bar No. 163559)
     e-mail: richard@lozeaudrury.com
3    Douglas J. Chermak (CA Bar No. 233382)
     e-mail: doug@lozeaudrury.com
4    LOZEAU DRURY LLP
     1516 Oak Street, Suite 216
5    Alameda, CA 94501
     Tel: (510) 749-9102
6    Fax: (510) 749-9103

7    Attorneys for Plaintiff

UNITED STATE DISTRICT COURT    **ADR**

8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10    SAVE STRAWBERRY CANYON, a non- )  Case No.: C08-03494 TEH
     profit corporation,  )

11                  )  Complaint for Declaratory and
           Plaintiff,  )  Injunctive Relief
                 )

12          vs.  )
                 )

13    LAWRENCE BERKELEY NATIONAL  )
     LABORATORY, a federal national  )
14    laboratory; STEVEN CHU, in his official  )
     capacity; DEPARTMENT OF ENERGY, a )
15    federal agency; SAMUEL W. BODMAN,  )
     in his official capacity; BENJAMIN  )
16    ALLEN, in his official capacity; RICHARD )
     C. BLUM, in his official capacity;  )
17    WILLIAM DE LA PEÑA, in his official  )
     capacity; RUSSELL S. GOULD, in his  )
18    official capacity; JUDITH L. HOPKINSON, )
     in her official capacity; JOHN HOTCHKIS,)
19    in his official capacity; EDDIE ISLAND, in )
     his official capacity; ODESSA P.  )
20    JOHNSON, in her official capacity;  )
     JOANNE CORDAY KOZBERG, in her  )
21    official capacity; SHERRY L. LANSING, in)
     her official capacity; MONICA C.  )
22    LOZANO, in her official capacity;  )
     GEORGE M. MARCUS, in his official  )
23    capacity; NORMAN J. PATTIZ, in his  )
     official capacity; BONNIE RIESS, in her  )
24    official capacity; FREDERICK RUIZ, in his)
     official capacity; LESLIE TANG  )
25

SCHILLING, in her official capacity; )
BRUCE D. VARNER, in his official )
capacity; PAUL D. WACHTER, in his )
official capacity; ARNOLD )
SCHWARZENEGGER, in his official )
capacity; MARK G. YUDOF, in his official )
capacity; JOHN GARAMENDI, in his )
official capacity; FABIAN NUÑEZ, in his )
official capacity; JACK O'CONNELL, in )
his official capacity; ELEANOR V. )
BREWER, in her official capacity; and )
PHILIP J. BUGAY, in his official capacity )
)
      Defendants. )

## INTRODUCTION

1.    This action involves whether the Computational Research and Theory

Facility Project proposed to be constructed and operated by the Lawrence Berkeley

National Laboratory ("LBNL") is a federal action triggering the environmental review

provisions of the National Environmental Policy Act, ("NEPA"), 42 U.S.C. § 4321 *et seq.*

LBNL is a federal facility owned by the U.S. Department of Energy and managed and

operated by the University of California under a federal contract with the Department of

Energy. The Computational Research and Theory Facility Project includes

development of a new building, access driveways and pedestrian access, and

associated infrastructure to accommodate (1) the Department of Energy's National

Energy Research Scientific Computing Center, (2) the associated High Performance

Computing ("HPC") Center, and (3) researchers and students from LBNL's

Computational Research Division and the joint U.C. Berkeley/LBNL Computational

Science and Engineering program.

2.    The Computational Research and Theory Facility Project is proposed as

part of LBNL's overall program. LBNL's programs advance four distinct goals for DOE

1    and the nation: (1) To perform leading multidisciplinary research in the computing

2    sciences, physical sciences, energy sciences, biosciences, and general sciences in a

3    manner that ensures employee and public safety and protection of the environment; (2)

4    To develop and operate unique national experimental facilities for qualified

5    investigators; (3) To educate and train future generations of scientists and engineers

6    by promoting national science and education; and (4) To transfer knowledge and

7    technological innovations and to foster productive relationships among the LBNL

8    research programs, universities, and industry in order to promote national economic

9    competitiveness.

10

11    3.    Despite the federal nature of LBNL and the Computational Research and

12    Theory Facility Project, none of the Defendants have taken any action to comply with

13    the requirements of NEPA. Despite preparing an environmental impact report ("EIR")

14    pursuant to the California Environmental Quality Act ("CEQA"), California Public

15    Resources Code § 21000 *et seq.*, LBNL and the Regents of the University of California

16    have stated that the review of environmental impacts required by NEPA do not apply to

17    the proposed Computational Research and Theory Facility Project because it does not

18    involve a federal project.

19    4.    Plaintiff seeks orders (1) restraining and enjoining Defendants from taking

20    actions to carry out the Computational Research and Theory Facility Project that could

21    result in any change or alteration to the physical environment pending trial; (2)

22    declaring that the Computational Research and Theory Facility Project is a federal

23    action triggering the environmental review requirements of NEPA; and (3) until such

24    time as compliance with NEPA is achieved, enjoining Defendants from proceeding with

25

Complaint - 3

1  any activities relating to construction of the Computational Research and Theory

2  Facility.

3  ## JURISDICTION AND VENUE

4  5.  Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal

5  question), 28 U.S.C. § 1346 (United States as defendant), 28 U.S.C. § 2201

6  (declaratory relief), and 28 U.S.C. § 2202 (injunctive relief) and the Administrative

7  Procedures Act, 5 U.S.C. §§ 701-706.

8  6.  Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e).

9
10  Pursuant to Local Rule 3-2(c), intradistrict venue is proper in San Francisco or Oakland,

11  California because the sources of the violations are located within Alameda County,

12  California.

13  7.  This complaint is timely filed within the applicable statute of limitations.

14  ## PARTIES

15  8.  Plaintiff Save Strawberry Canyon is a local citizens' group based in

16  Berkeley, California. The group's mission is to preserve and protect the watershed

17  lands and cultural landscape of Strawberry Canyon, a unique natural and cultural

18  feature located in the hills above the City of Berkeley.  Save Strawberry Canyon was

19  formed out of the urgent need to take action in response to the threat of intrusive and

20  inappropriate development on lands within and adjacent to the Canyon.  Save

21  Strawberry Canyon seeks to inform the public about the impacts of proposed

22  developments, to encourage location of such developments to more suitable sites, and

23  to promote better public access to the Canyon with its wildlife and scenic resources.

24

25

9. Members of Save Strawberry Canyon include concerned residents of Berkeley and Oakland, California who recreate, walk, view wildlife and scenery, engage in cultural and historic research, reside, and otherwise use and enjoy the natural and cultural resources of Strawberry Canyon and areas in and around LBNL and the City of Berkeley that will be adversely affected by the project. Plaintiff and its members have been involved in the administrative proceedings that have been provided to date for the Computational Research and Theory Facility Project, including attending meetings and providing written and oral comments. Plaintiff's members' environmental, aesthetic, recreational, scenic, scientific, historic, cultural, informational, and community interests will, unless the relief requested herein is granted, be adversely affected and injured by Defendants' failure to comply with NEPA in approving the Computational Research and Theory Facility Project. Plaintiff brings this action on behalf of its members and the public interest.

10. Plaintiff exhausted all of the administrative remedies available from the Defendants. Although Defendants did not conduct any proceedings pursuant to NEPA, Plaintiff, other agencies, interested groups, and individuals participated in the administrative proceedings leading up to the Regents of the University of California's and Defendant LBNL's approval of the project and certification of an EIR pursuant to CEQA, either by participating in hearings thereon or by submitting letters commenting on LBNL's Notice of Preparation, draft EIR or final EIR. Plaintiff's or others' comments raised each of the claims alleged in this complaint. In addition to those comments, on June 25, 2008, Plaintiff sent via e-mail, facsimile transmission, and overnight delivery correspondence addressed to Defendant Secretary of Energy Samuel W. Bodman and

1    Defendant United States Department of Energy as well as Defendant Department of

2    Energy's site office located at LBNL informing them of Defendants' failure to comply

3    with NEPA and Plaintiff's intent to file this lawsuit.

4    11.   Plaintiff attempted to persuade Defendants that their environmental review

5    did not comply with the requirements of NEPA, to no avail.  Plaintiff has no plain,

6    speedy, or adequate remedy in the ordinary course of law, in that the Regents' and

7    LBNL's approval of the Computational Research and Theory Facility Project and

8    associated EIR is not otherwise reviewable in a manner that provides an adequate

9    remedy to cure Defendants' violations of NEPA.  Accordingly, Plaintiff seeks an order of

10   this Court rectifying Defendants' violations of NEPA.

11

12   12.   Defendant LAWRENCE BERKELEY NATIONAL LABORATORY is a federal

13   national laboratory owned by the US Department of Energy that conducts unclassified

14   research across a wide range of scientific disciplines.  The Computational Research

15   and Theory Facility Project is proposed as an integral part of LBNL's facilities and

16   programs.  LBNL proposed the Computational Research and Theory Facility Project.

17   13.   Defendant STEVEN CHU is the Director of LBNL.  Mr. Chu's duties

18   include the general management of the Lab including compliance with applicable

19   environmental laws.

20

21   14.   Defendant DEPARTMENT OF ENERGY is a federal agency that owns

22   LBNL and contracts with the University of California through the University's Regents to

23   operate the LBNL on behalf of the Department of Energy.  The Department of Energy

24   also funds and operates, through LBNL, the National Energy Research Scientific

25   Computing Center.

Complaint - 6

15.    Defendant SAMUEL W. BODMAN is the Secretary of Energy and oversees the Department of Energy including the agency's compliance with NEPA and other environmental laws.

16.    The Regents of the University of California is a board that governs the University of California, including the University's adherence to the federal contract signed with DOE to operate and manage LBNL.  The Board of Regents includes 25 voting members.  The 25 voting members of the Regents of the University of California are each sued in their official capacity.  These Defendants include BENJAMIN ALLEN; RICHARD C. BLUM;  WILLIAM DE LA PEÑA;  RUSSELL S. GOULD;  JUDITH L. HOPKINSON;  JOHN HOTCHKIS;  EDDIE ISLAND;  ODESSA P. JOHNSON; JOANNE CORDAY KOZBERG;  SHERRY L. LANSING;  MONICA C. LOZANO; GEORGE M. MARCUS;  NORMAN J. PATTIZ;  BONNIE RIESS;  FREDERICK RUIZ; LESLIE TANG SCHILLING;  BRUCE D. VARNER;  PAUL D. WACHTER;  ARNOLD SCHWARZENEGGER;  MARK G. YUDOF;  JOHN GARAMENDI;  FABIAN NUÑEZ; JACK O'CONNELL;  ELEANOR V. BREWER; and PHILIP J. BUGAY.  The Regents have contracted with the Department of Energy to operate and manage LBNL.  The Regents were the lead agency for the purpose of considering the Computational Research and Theory Facility Project pursuant to CEQA.

## LEGAL BACKGROUND

## THE NATIONAL ENVIRONMENTAL POLICY ACT

17.    "NEPA ... makes environmental protection a part of the mandate of every federal agency and department," *Calvert Cliffs' Coord. Com. v. United States*, 440 F.2d 1109, 112 (D.C. Cir. 1971), and is the "basic national charter for protection of the

environment."   40 C.F.R. § 1500.1(a).  Its purpose is "to help public officials make decisions that are based on understanding of environmental consequences, and take actions that protect, restore, and enhance the environment."  *Id.* § 1500.1(c).  The Council on Environmental Quality ("CEQ"), an agency within the Executive Office of the President, has promulgated regulations implementing NEPA that have been adopted by the Department of Energy. *See* 10 C.F.R. § 1021.103.

18.   Among other things, NEPA requires all agencies of the federal government to prepare a "detailed statement" that discusses the environmental effects of, and reasonable alternatives to, all "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).  This statement is commonly known as an environmental impact statement ("EIS").  An EIS must describe: (1) the "environmental impact of the proposed action"; (2) any "adverse environmental effects which cannot be avoided should the proposal be implemented"; and (3) any "alternatives to the proposed action." *Id.*

19.   A "*Major Federal action* includes actions with effects that may be major and which are potentially subject to Federal control and responsibility."  40 C.F.R. § 1508.18 (emphasis in original).  Major federal actions "include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies. . . ."  40 C.F.R. § 1508.18(a).  One example of a type of major federal action includes "[a]pproval of specific projects, such as construction or management activities located in a defined geographic area.  Projects include actions approved by permit or other regulatory decision as well as federal and federally assisted activities."  40 C.F.R. § 1508.18(b).  The environmental "effects" that

1   must be considered in an EIS include "indirect effects, which are caused by the action

2   and are later in time or farther removed in distance, but are still reasonably

3   foreseeable." 40 C.F.R. § 1508.8(b). CEQ regulations list a number of factors that an

4   agency must consider in deciding whether to prepare an EIS. 40 C.F.R. § 1508.27.

5   20. When an agency does not know whether the effects of its action will be

6   "significant," it may prepare an Environmental Assessment ("EA") to help make that

7   determination. 40 C.F.R. § 1501.4(b). An EA is a concise analysis of the need for the

8   proposed action, of alternatives thereto, and of the environmental impacts of both the action

9   and the alternatives. 40 C.F.R. § 1508.9. If the EA indicates that the federal action may

10  significantly affect the quality of the human environment, the agency must prepare an EIS.

11  40 C.F.R. § 1501.4(c). If the agency decides not to prepare an EIS, it must prepare a

12  finding of no significant impact ("FONSI"), which explains the agency's reasons for its

13  decision. 40 C.F.R. § 1508.13.

14
## FACTUAL AND PROCEDURAL BACKGROUND
15

16  21. LBNL is a Department of Energy facility. LBNL became a federal facility in

17  1942. LBNL is one of 10 national laboratories owned by the Department of Energy.

18  LBNL is overseen by DOE's Office of Science. LBNL is a federal facility managed and

19  operated by the University of California under a U.S. Department of Energy contract.

20  LBNL's existence is governed by the terms of the contract between the Department of

21  Energy and the University of California. The contract calls for budget and program

22  planning that is coupled to the Department of Energy, the Department of Energy's

23  plans, and the federal budgeting process.

24  22. The Computational Research and Theory Facility Project includes the

25  construction at LBNL of a new building approximately 126,300 gross square feet ("gsf")

in size, which includes 73,000 assignable square feet ("asf"). This includes 32,000 asf of high-performance computing space, 22,000 asf of mechanical space designed to keep the Department of Energy's National Energy Research Scientific Computing Center computers cool and 40,600 asf for offices, a visualization laboratory, and conference space that will accommodate the entire staffs of the LBNL National Energy Research Scientific Computing Division and Computational Research Division, and some staff from the joint LBNL/U.C. Berkeley Computational Science and Engineering program. The total combined office occupancy will be 300 staff. About 2900 users of the National Energy Research Scientific Computing Center are remote users who access the facility through high-performance networks. The Computational Research and Theory Facility project will be constructed on Regents-owned land that is managed by LBNL and included in the LBNL 2006 Long Range Development Plan.

23. A key purpose of the Computational Research and Theory Facility is to house the National Energy Research Scientific Computing Center. The National Energy Research Scientific Computing Center is a series of large, high performance computers. LBNL is constructing the Facility in order to move the National Energy Research Scientific Computing Center from a leased facility in Oakland to LBNL in order to increase the size of LBNL's computer floor area and to collocate computer scientists, mathematicians, computational scientists, and theoreticians with immediate access to the computing systems. LBNL currently houses the National Energy Research Scientific Computing Center in a 19,000-square-foot computer room in leased space at LBNL's Oakland Scientific Facility.

24. The proposed Facility is designed specifically for the National Energy Research Scientific Computing Center's supercomputers, including, but not limited to, a cooling system, air intakes, cooling towers, additional electrical power capabilities, reinforced floor structures, and mechanical support areas. The Computational Research and Theory Facility will be the permanent home of the Department of Energy's National Energy Research Scientific Computing Center. The Computational Research and Theory Facility is designed to house the next increment of the Department of Energy's supercomputing facilities. The procurement process for the Computational Research and Theory Facility's supercomputer is underway.

25. Construction of the Computational Research and Theory Facility is projected to cost $112,944,000.00. $107,500,000 of that cost would be funded from external financing. The source of repayment for external financing is LBNL operating funds. LBNL receives revenue from three primary sources: (1) approximately 77 percent from the Department of Energy, (2) eight percent from National Institute of Health contracts and grants; and (3) fifteen percent from all other agencies' contracts and grants. In fiscal year 2007, LBNL's revenues from these sources totaled $516 million. LBNL uses all of the funds to pay for operating expenses related to lab operations and research expenditures. Pursuant to the LBNL contract, LBNL receives funds from the Department of Energy to support specific programs, such as the National Energy Research Scientific Computing Center and computational research. Plaintiff is informed and believes that the Department of Energy has supported the financing of the Computational Research and Theory Facility project by agreeing to increase the National Energy Research Scientific Computing Center and Computational Research

1  and Theory program funds commencing in fiscal year 2011 to be the source of
2  repayment for the external financing.   LBNL operating funds in the amount of $444,000
3  have been budgeted for studies in support of the Computational Research and Theory
4  Facility.

5     26.   Plaintiff is informed and believes that the location of the project at LBNL was
6  required by the Department of Energy based on security reasons.

7     27.   When presenting the final EIR prepared pursuant to CEQA to The Regents,
8  the University's Office of the President stated that "the [Computational Research and
9  Theory Facility] Project, which is the construction and operation of the CRT facility, is
10  not subject to NEPA review, as per 40 Code of Federal Regulations (CFR) Parts 1500
11  through 1508, and 10 CFR Part 1021."  The reasons provided were that "[t]he project
12  would not be constructed on federally owned or leased land, nor would it be financed or
13  otherwise discretionarily permitted by the US Department of Energy" and, thus, "[i]t is
14  not a "major Federal action" as defined by 40 CFR Part 1508.18."  Accordingly, none of
15  the Defendants has taken any steps, and have indicated their intent not to take any
16  steps, to comply with NEPA in proceeding with the Computational Research and Theory
17  Facility Project.

18     28.   On July 26, 2007, LBNL published a notice of preparation announcing their
19  intent to prepare an EIR pursuant to CEQA for the proposed Computational Research
20  and Theory Facility Project.  LBNL held a public scoping meeting for the EIR on August
21  8, 2007.

Complaint - 12

1      29.   LBNL and the University circulated a Draft EIR for public and agency review
2   between November 9, 2007 and January 4, 2008.  On December 10, 2007, LBNL held a
3   public hearing on the draft EIR.

4      30.   In April 2008, LBNL and the University released a final EIR.  On May 13,
5   2008, the Regents' certified the final EIR pursuant to CEQA, adopted findings and
6   mitigation measures and approved the Computational Research and Theory Facility
7   Project.  On May 28, 2008, the Regents filed a notice of determination to carry out the
8   project with the California State Clearinghouse.

9      31.   Defendants are threatening to proceed with the construction and operation
10  of the project in the near future, including the removal of trees and grading activities.
11  Defendants' initiation of construction of the Computational Research and Theory Facility
12  will irreparably harm the environment in that Defendants will commence with
13  construction or demolition activities without compliance with NEPA resulting in air
14  pollution, aesthetic, cultural, noise, and other environmental impacts to Plaintiff.  A
15  temporary restraining order and preliminary and permanent injunctions should issue
16  restraining Defendants from proceeding with construction-related activities for the
17  Computational Research and Theory Facility.

18  **FIRST CLAIM FOR RELIEF**
19  **(Violation of the National Environmental Policy Act)**

20     32.   Plaintiff hereby incorporates paragraphs 1 through 31 herein as if set forth
21  in full.

22     33.   Defendants' failure to prepare any environmental documents pursuant to
23  NEPA based on a determination that the Computational Research and Theory Facility

24

25

Project is not a federal action is in violation of the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, and its implementing regulations, 40 C.F.R. § 1500 *et seq.*

34.    The Computational Research and Theory Facility Project is a major federal action significantly affecting the human environment within the meaning of 42 U.S.C. § 4332(2)(C) for at least the following reasons:

a.    The Computational Research and Theory Facility Project is part of LBNL. LBNL is a national laboratory created by a federal contract between the Department of Energy and the University of California. The contract is governed by federal law. The contract encompasses all activities of LBNL, including work with other entities besides the Department of Energy.

b.    The Computational Research and Theory Facility Project includes operation of the Facility the predominant purpose of which is to provide infrastructure, power and operation of Department of Energy programs and supercomputers and other federal-sponsored activities by LBNL and others.

c.    The Department of Energy has agreed or otherwise proposes to provide the operating funds that are being relied upon to pay $107,500,000 of the projects' overall cost of $112,944,000. LBNL operating funds provide by the Department of Energy also have been used in preparing the Project proposal.

1    d. The Project, as proposed, will result in significant impacts to the human

2        environment including air quality impacts, traffic impacts, visual impacts,

3        and noise impacts.

4    e. The action "may adversely affect an endangered or threatened species or

5        its [critical] habitat" within the meaning of 40 C.F.R. § 1508.27(b)(9);

6    f.  The action "may establish a precedent for future actions with significant

7        effects" within the meaning of 40 C.F.R. § 1508.27(b)(6);

8    g.  The action is related to other actions with individually insignificant but

9        cumulatively significant impacts within the meaning of 40 C.F.R. §

10       1508.27(b)(7);

11

12   h. The action will adversely affect unique characteristics of the Strawberry

13       Creek watershed such as proximity to historic or cultural resources within

14       the meaning of 40 C.F.R. § 1508.27(b)(3).

15   35.    Defendants' actions in failing to comply with NEPA are arbitrary, capricious,

16   an abuse of discretion and contrary to law in violation of the Administrative Procedures

17   Act, 5 U.S.C. §§ 500 *et seq.*, and are subject to judicial review thereunder.

18                                    **PRAYER FOR RELIEF**

19   36.    WHEREFORE, Plaintiffs respectfully request that the Court:

20   37.    Adjudge and declare that the Computational Research and Theory Facility

21   Project is a federal action and that Defendants failure to prepare any environmental

22   documentation pursuant to NEPA violates that statute, its implementing regulations and

23   the Administrative Procedures Act.

24

25

38.   Order the Defendants to prepare, circulate and consider an EIS or other appropriate findings necessary to comply with the requirements of NEPA and its implementing regulations.

39.   Preliminarily and permanently enjoin Defendants from initiating any activities in furtherance of the Computational Research and Theory Facility Project that could result in any change or alteration to the physical environment unless and until Defendants comply with the requirements of NEPA.

40.   Award Plaintiff its reasonable attorneys' fees and its costs, expenses and disbursements associated with this action.

41.   Grant Plaintiff such additional and further relief as the Court may deem just and proper.

DATED:  July 21, 2008

Respectfully submitted,

Michael R. Lozeau
LOZEAU DRURY LLP

Attorneys for Plaintiff

Complaint - 16